UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,                     :
                                              :
                                              :     **OPINION AND ORDER**
                  -against-                   :     13-CR-269 (S-5) (DLI)
                                              :
JOHN SAMPSON,                                 :
                                              :
                         Defendant.           :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Defendant John Sampson (the "Defendant") was indicted in the Eastern District of New York for embezzlement under 18 U.S.C. § 666 (Counts 1 and 2), obstruction of justice under 18 U.S.C. § 1503 (Count 4), witness and evidence tampering under 18 U.S.C. § 1512 (Counts 5-7), concealment of records under 18 U.S.C. § 1519 (Count 8), and false statements to law enforcement officers under 18 U.S.C. § 1001 (Counts 9-11). (Fifth Superseding Indictment ("SSI") ¶¶ 52-55, 58-73, Dkt. Entry No. 121.) On October 31, 2014, the Court dismissed Counts 1 and 2 as barred by the statute of limitations. On March 17, 2015, the government filed a fifth superseding indictment that added a count for conspiracy to obstruct justice under 18 U.S.C. § 1512. (SSI ¶¶ 56-57.)

Defendant and government filed motions *in limine* on December 1, 2014 to have evidence introduced or precluded at trial. (*See* Def's Mot. in Limine, Dkt. Entry No. 84; Gov't's Mot. in Limine, Dkt. Entry No. 87.) On the same day, the government filed an additional letter setting forth other evidence it would seek to introduce at trial, if Defendant were to testify, including: 1) proffer-protected statements; 2) evidence of Defendant's predisposition to commit the charged crimes if Defendant asserts an entrapment defense; and 3) topics for cross-

examination.[1]  (Gov't Letter of Dec. 1, 2014 ("Gov't's Letter"), Dkt. Entry No. 91.)  At a status conference held on February 2, 2015, Defendant also moved to preclude two audio recordings. For the reasons set forth below, the government's motion is granted in part and denied in part and Defendant's motion is granted in part and denied in part.

## I.      The Superseding Indictment

From 1997 to the present, Defendant has served as a member of the New York State Senate.[2]  (SSI ¶ 1.)  Since 1992, he also has practiced law in New York.  (*Id.* ¶¶ 1-2.)  In Counts 3-10 of the SSI, the government makes several allegations regarding Defendant's alleged interference with an ongoing federal investigation.  The alleged interferences revolve around the theory that Defendant was attempting to conceal embezzlement and bribery offenses from federal officials.

Specifically, the SSI alleges that Defendant embezzled hundreds of thousands of dollars from bank accounts while serving as a referee on foreclosed properties in Brooklyn (the "Referee Accounts").  As a referee, Defendant would receive and disburse funds from foreclosed properties on behalf of the Supreme Court of the State of New York.  (*Id.* ¶¶ 4, 12.)  Defendant embezzled surplus funds from the Referee Accounts.  (*Id.* ¶ 5.)  In order to repay the embezzled money, Defendant obtained $188,500 (the "Associate Transaction") from an associate ("the Associate") that Defendant characterized as a loan he would repay, but which, in fact, was not repaid.  (*Id.* ¶ 6-7.)

In July 2011, the Associate was arrested in the Eastern District of New York on bank and wire fraud charges as part of a scheme to defraud mortgage lenders.  (*Id.* ¶ 8.)  Shortly after the

---

[1] For the sake of judicial economy, the additional requests set forth in this letter were incorporated into the discussion of the government's motions *in limine* so that all the requests could be addressed in this Opinion and Order.

[2] During the pendency of this matter, Defendant was re-elected to another Senate term.

Associate was arrested, Defendant allegedly began to engage in obstructive conduct to prevent the Associate from cooperating with law enforcement authorities. (*Id.* ¶ 9.) First, Defendant reached out to an administrative employee (the "Employee") at the United States Attorney's Office ("USAO") for information regarding the Associate's case. (*Id.* ¶ 29-30.) Defendant told the Associate that he had asked the Employee for the identities of cooperating witnesses in the Associate's case and, if they were able to identify the witnesses, Defendant could arrange to "take them out." (*Id.*) Defendant also asked the Employee to determine whether the USAO was investigating him. (*Id.*) During this time period, from mid-December 2011 to mid-March 2012, law enforcement authorities conducted a judicially authorized wiretap on Defendant's cellular phone. (*Id.* ¶ 28.)

At the direction of law enforcement officers, the Associate told Defendant that the federal government had subpoenaed business records from the Associate and, while reviewing the records, the Associate had located a receipt for the Associate Transaction (the "Check Register Page"). (*Id.* ¶ 33.) The Associate then showed the Check Register Page to Defendant explaining that he had not yet disclosed it to the government. (*Id.*) Defendant allegedly then instructed the Associate not to disclose the Check Register Page to the government. (*Id.* 34-36.) Defendant also instructed the Associate to lie to the government about what had happened to the Check Register Page and not to tell the government that the Associate had lent Defendant money. (*Id.*) Defendant never returned the Check Register Page to the Associate. (*Id.* ¶ 37.)

Count 11 of the SSI charges Defendant with making materially false, fictitious and fraudulent statements and representations to Federal Bureau of Investigation ("FBI") agents about an outstanding sales tax balance owed by a liquor store in which Defendant allegedly has a financial interest. (*Id.* ¶¶ 43-46, 50-51, 72-73.) By way of background, as a Senator, Defendant

was required to disclose any ownership interest he had in any business or any outstanding debts he owed.  (*Id.* ¶ 3.)  In or about December 2011, John Sampson, along with four other partners, acquired an ownership interest in a liquor store in Brooklyn, New York that he subsequently concealed from his Senate staff members.  (*Id.* ¶¶ 10, 40-41.)  When acquired, the liquor store owed an outstanding sales tax balance.  (*Id.*)  Defendant, without disclosing his interests, allegedly directed his Senate staff member to resolve the liquor store's outstanding sales tax obligation.  (*Id.* ¶¶ 43-46.)  On July 27, 2012, Special Agents of the FBI interviewed Defendant about his involvement in the liquor store.  (*Id.* ¶ 47.)  Defendant allegedly admitted to the FBI agents that he had an ownership interest in the liquor store, but denied that he had asked his Senate staff member to resolve the liquor store's tax issues.  (*Id.* ¶¶ 50, 73.)

## II.     Government's Motion *in Limine*

The government moves *in limine* to: 1) admit evidence of uncharged crimes and other acts as direct evidence of the charged crimes and/or pursuant to Rule 404(b) of the Federal Rules of Evidence; 2) admit proffer-protected admissions should Defendant introduce contradictory evidence or make contradictory arguments; 3) admit other uncharged conduct in its case-in-chief if Defendant raises an entrapment defense; 4) permit the government to cross-examine Defendant concerning certain prior "bad acts" should he testify; and 5) preclude the defense from introducing certain self-serving evidence or making certain arguments.  (Mem. of Law in Supp. of the Gov't's Mots. in Limine ("Gov't's Mem.") attached as Exhibit 1 to Gov't's Mots. in Limine at 1, Dkt. Entry No. 90.)  Defendant opposes seeking to stipulate to certain facts instead. (*See generally* Def. John Sampson's Mem. of Law in Opp'n to the Gov't's Mots. in Limine ("Def.'s Opp'n"); Dkt. Entry No. 101.)  Defendant also moves *in limine* to preclude the

government from introducing evidence about the liquor store, embezzlement, bribery, and certain recordings between Defendant and the Associate.

   A.  *Admission of Evidence of Uncharged Crimes and Other Acts*

   The government seeks to introduce the following: 1) evidence of Defendant's embezzlement from four bank accounts relating to foreclosure actions in which he was the referee; 2) evidence that the Associate bribed Defendant to perform official acts on his behalf; 3) evidence that Defendant failed to disclose a monetary transaction with the Associate as required on his Senate Financial Disclosure Forms from 2006 to 2011; and 4) evidence that Defendant had a relationship of trust with the Associate.  (*See generally* Gov't's Mem.)  Defendant opposes arguing that: 1) the government "seeks to try" uncharged embezzlement and public corruption crimes, which would confuse the jury concerning the actual charges brought by the government; 2) the evidence is inadmissible pursuant to Rule 403 because it is prejudicial, would waste trial time, and cause jury confusion; and 3) the proffered evidence could be "viewed as far more serious than the alleged obstruction."  (Def.'s Opp'n at 1-3.)  Defendant also offers to stipulate to certain facts in lieu of the government's introduction of evidence to prove the facts at trial.  (*See generally* Def.'s Opp'n.)

   Evidence of uncharged criminal conduct is relevant and potentially admissible under two doctrines. First, evidence of uncharged criminal conduct is relevant if the uncharged conduct "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); accord *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (affirming the admission of uncharged murders against a defendant charged with murder and RICO violations as the

uncharged conduct was "proof of the existence of the RICO enterprise . . . which used such acts of violence in furtherance of its narcotics conspiracy"); *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself."); *cf. United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense").

Second, evidence of uncharged criminal conduct is relevant and admissible as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" under Rule 404(b) of the Federal Rules of Evidence. FED. R. EVID. 404(b); *see also United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984) ("[A]s long as the evidence is not offered to prove propensity, it is admissible."). The Second Circuit, while adopting an inclusionary approach to Rule 404(b), has held that three requirements must be met before evidence may be admitted under this rule. "Evidence . . . offered under Fed. R. Evid. 404(b) may be admitted if the court: 1) determines that the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity; 2) determines that the evidence is relevant under Fed. R. Evid. 401 & 402,[3] and is more probative than unfairly prejudicial under Fed. R. Evid. 403; and 3) provides an appropriate limiting instruction to the jury, if one is requested." *United States v. Mickens*, 926 F.2d 1323, 1328 (2d Cir. 1991) (internal citations and

---

[3] Rule 401 states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.

Rule 402 states that "[r]elevant evidence is admissible unless any of the following provides otherwise:
- the United States Constitution;
- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.
Irrelevant evidence is not admissible." FED. R. EVID. 402.

quotations omitted). Additionally, the Second Circuit has held that, "when a defendant has been charged with actual . . . obstruction of justice with respect to a given crime, evidence of the underlying crime and the defendant's part in it is admissible to show the motive for his efforts to interfere with the judicial process." *United States v. Willoughby*, 860 F.2d 15, 24 (2d Cir. 1988); *see also United Stated v. Bradwell*, 388 F.2d 619 (2d Cir. 1968) (affirming trial court's decision to admit evidence of crime defendant was acquitted of, in order to show a defendant's motive for committing obstruction of justice).

Yet, not all relevant evidence is admissible. Under Federal Rule of Evidence 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Upon weighing the probative value and risk of prejudice of admitting these uncharged crimes, the court must preclude any uncharged conduct that is unduly prejudicial to the defendant. The court also must "be careful to consider the cumulative impact of the evidence on the jury and to avoid the potential prejudice that might flow from its admission." *See United States v. Wallach*, 935 F.2d 445, 472 (2d Cir. 1991). However, in *United States v. Bradwell*, the Second Circuit held that "[w]hile allowing such proof in an obstruction case inevitably entails danger that the jury may convict the defendant for the crime previously investigated, this is a matter for cautionary limiting instructions . . . ." *Bradwell*, 388 F.2d at 621.

Defendants may offer to stipulate to certain facts in order to avoid the admission of evidence, upon the contention that the evidence is unfairly prejudicial pursuant to Rule 403. *See e.g., United States v. Cottman*, 116 F.3d 466 (2d Cir. 1997) (unpublished). However, the Supreme Court has made clear that a "criminal defendant may not stipulate or admit his way out

of the full evidentiary force of the case as the government chooses to present it." *See Old Chief v. United States*, 519 U.S. 172, 186-87 (1997). "[T]he prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." *See id.* at 192. "The rationale for this rule is 'to permit a party to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.'" *Cottman*, 116 F.3d at 3 (quoting *Old Chief*, 519 U.S. at 186.)

### 1. *Evidence of Embezzlements*

The government seeks to introduce the following evidence of federal program embezzlements in its case in chief to prove that Defendant hindered communications related to a federal offense in violation of 18 U.S.C. 1512(b)(3) (Counts 5 and 6): "(a) testimony of recordkeeping witnesses to establish the mechanics of the foreclosure process and to admit relevant records; (b) testimony regarding [D]efendant's statements to the Associate in July 2006 about [D]efendant's embezzlement from the referee accounts; and (c) bank records, cancelled checks, and court documents showing that (i) surpluses remained after [D]efendant conducted the relevant foreclosure sales as referee, (ii) [D]efendant embezzled from these referee accounts, (iii) [D]efendant used the Associate Transaction to replenish the Bay Ridge Avenue and Linden Boulevard Referee Accounts and to remit the relevant surplus funds, and (iv) [D]efendant failed to remit to the Kings County Clerk any surplus funds from the Eighth Avenue Referee Account." (Gov't's Mem. at 7, 11.) The government asserts it will take approximately one day to introduce this evidence. In the alternative, the government seeks to introduce this evidence under Rule 404(b) to show a motive for Defendant to obstruct justice. (*Id.* at 7-11.) Defendant objects

arguing that the government should be precluded from introducing evidence of uncharged crimes and crimes dismissed as barred by the statute of limitations, and that the evidence would be unfairly prejudicial as "the New York public views official corruption with a particularly jaundiced eye," confuse the issues, create undue delay, and waste time.  (Def.'s Opp'n at 5-15.)  Instead, Defendant offers to "stipulate that the 'Check Register Page' and information about that document 'relat[ed] to the…possible commission of a Federal offense,'" thereby removing that element from the case.  (Def.'s Opp'n at 8.)

Upon performing the balancing test required under Rules 403 and 404(b), the Court holds that the embezzlement evidence is admissible as direct evidence relevant to the obstruction of justice charge.  Proof of the embezzlements, though dismissed criminal acts, is necessary both to complete the story of the crime on trial and to establish an element required to prove witness tampering under 18 U.S.C. § 1512(b)(3).  *See* 18 U.S.C. § 1512(b)(3) (requiring the government to prove that Defendant attempted to hinder the communication of information relating to the commission or possible commission of a federal offense or offenses to federal law enforcement officers or judges).  Defendant is charged with concealing a "Check Register Page" from federal agents.  This "Check Register Page" is alleged to be proof of a "loan" the Associate gave Defendant in order to repay money Defendant allegedly embezzled from referee accounts.  Evidence concerning the embezzlement scheme gives the jury context for the importance of the "Check Register Page," Defendant's interest in the document, and his motive for obstructing justice.  Furthermore, the government must prove the possible commission of a federal offense as an element of 18 U.S.C. § 1512(b)(3).  Therefore, the government must introduce evidence of the embezzlements if it is to sustain its burden of proof.  Excluding this evidence would deprive the government of the ability to prove Counts 5 and 6.  Furthermore, the evidence also is admissible

under Rule 404(b). The evidence shows a motive for committing the obstruction of justice, witness tampering, and false statement offenses, is relevant under Rules 401 and 402, and is more probative than prejudicial.

The Court finds unavailing Defendant's position that the evidence should be excluded because the embezzlement charges were dismissed as outside the statute of limitations. There is no law to support Defendant's position. If the government may introduce evidence of crimes a defendant was acquitted for as in *Bradwell*, then it certainly can introduce evidence of time-barred crimes. Notably, Defendant does not meet the requirements for excluding the evidence under Rule 403. As the government states, it will take only one day to present this evidence at trial and will not cause undue delay. Even if the evidence was introduced over several days, this would not constitute undue delay in a trial that otherwise is expected to last approximately five weeks. The evidence is inextricably intertwined with the crime. The alleged obstruction of justice involved concealing a "Check Register Page" indicating the Associate "lent" Defendant money that Defendant then used in the embezzlement scheme. This makes the evidence highly probative and will not tend to confuse the jury. The evidence also proves an element of the government's case, completes the story of the crime on trial, and shows a motive to commit the crimes. Without the embezzlement evidence, the story is incomplete and the jury certainly would be left to wonder why Defendant had interfered in a federal investigation. The Court finds unavailing Defendant's arguments that the embezzlement evidence shows bad acts that are "more serious" in nature than the charged crimes. Interfering with a federal investigation is a very serious crime, particularly when committed by a public official, who also is an attorney. Therefore, the probative value of the evidence outweighs any prejudicial effect on Defendant.

Furthermore, any potential prejudicial effect can be addressed by appropriate limiting instructions to the jury, as needed, throughout the trial.

The Court declines to accept Defendant's offer to stipulate that the information regarding the "Check Register Page" related to the possible commission of a federal offense. Allowing Defendant to stipulate to this fact would deny the government the opportunity to present the full evidentiary force of its case, and, as the Court finds the evidence survives the balancing analysis under Rules 403 and 404(b), there is no reason to avoid any potential prejudicial effect through a stipulation.

### 2. *Evidence of Bribery*

The government proffers that the Associate will testify that, when he lent Defendant the Associate Transaction, the Associate did not consider the money a bribe, but, when it was clear Defendant would not repay the money, he began to ask Defendant to commit acts in Defendant's official capacity on his behalf. Consequently, the government seeks to introduce the following as direct evidence of bribery to prove that Defendant hindered communications related to a federal offense in violation of 18 U.S.C. § 1512(b)(3) (Counts 5 and 6): "(a) [that Defendant] intervene[ed] with the New York City Department of Environmental Protection ("DEP") to support the Associate's efforts to obtain a permit that enabled him to develop real property in Queens, New York; (b) [that Defendant] intervene[ed] with the Superintendent of the New York State Banking Department ("NYSBD"), the New York State Department of State ("DOS"), and a New York State administrative law judge in an effort to (i) delay and curtail an investigation of the Associate's business by the NYSBD and the DOS, and (ii) modify the terms of a settlement between the Associate's business and the NYSBD; and (c) [that Defendant] used Senate staff to contact institutional sellers of foreclosed 'real estate owned' or 'REO' properties in an effort to

persuade those sellers to use the Associate's real estate business as a designated seller of REO properties." (Gov't's Mem. at 13-14.) Alternatively, the government argues that this evidence is admissible under Rule 404(b) to show Defendant's motive for interfering in a federal investigation. Defendant objects for the same reasons that he objects to the admission of the embezzlement evidence, stressing that the Associate Transaction was a loan. (Def.'s Opp'n at 5-15.) As before, Defendant offers to stipulate to the "commission or possible commission of a federal offense." (*Id.* at 8.)

For the same reasons that the embezzlement evidence is admissible in the government's case in chief, the Court finds the bribery evidence admissible. As discussed above, 18 U.S.C. § 1512(b)(3) requires the government to prove that Defendant attempted to hinder the communication of information relating to the commission or possible commission of a federal offense or offenses. Therefore, the bribery evidence the government seeks to admit, which is evidence of a possible federal offense, is directly relevant to proving a case under 18 U.S.C. § 1512(b)(3). Furthermore, as with the embezzlement evidence, the bribery evidence completes the story of the crime on trial and explains Defendant's actions with regard to the federal investigation. It also provides a motive for the crime, tends to prove intent, and is admissible under Rule 404(b).

In performing the balancing test under Rule 403, the Court also finds the evidence is more probative than prejudicial. As with the embezzlement evidence, the bribery evidence will not cause undue delay, confuse or mislead the jury, waste time, or needlessly present cumulative evidence. The bribery evidence is inextricably intertwined with the alleged obstruction of justice as it satisfies an element of the crime and provides a motive for why Defendant would seek to

obstruct justice. This clear probative value outweighs any prejudicial effect on Defendant and limiting instructions will limit any potential harm to Defendant.

### 3. Senate Financial Disclosure Forms

The government seeks to introduce the following evidence to corroborate the Associate's testimony, complete the story of the "Associate Transaction", and show that Defendant intended to hide the "Associate Transaction" from the public: "(a) [D]efendant's Senate Financial Disclosure Forms from 2006 to 2011, which omit any reference to the Associate Transaction; (b) [D]efendant's Senate Financial Disclosure Forms from 2012 and 2013, which . . . disclose a loan of $188,500 from the Associate as one of [D]efendant's obligations; and (c) other testimony regarding [D]efendant's obligation to disclose the Associate Transaction on his Senate Financial Disclosure Forms." (Gov't Mem. at 14-15.) Defendant objects to its admission pursuant to Rule 403 arguing that documents with no reference to the loan are not evidence that the Associate Transaction occurred, are not probative, do not "complete the story" of the loan, and the evidence would unfairly prejudice him. (Def.'s Opp'n at 16.) Instead, Defendant offers to stipulate that "the checks reflected on the Check Register Page were issued." (*Id.*)

The Court will allow the introduction of the Senate Financial Disclosure Forms as relevant direct evidence of the obstruction of justice charges. As discussed above, the government intends to show that Defendant accepted the Associate Transaction in order to conceal embezzlements by repaying money unlawfully taken out of referee accounts. The Senate Financial Disclosure Forms will corroborate the Associate's testimony with regard to this theory. Defendant's failure to report the Associate Transaction on his Senate Financial Disclosure Forms suggests that Defendant was using the money for an illicit purpose, *i.e.* the embezzlements. Therefore, the Senate Financial Disclosure Forms help to complete the

government's story regarding the embezzlements and the resulting interference in a federal investigation.

Defendant's arguments that the evidence is more prejudicial than probative are unavailing. Very little prejudice will result from the jury knowing that Defendant did not disclose financial information on his Senate Financial Disclosure Forms as such an omission is not more egregious than the charged criminal acts. As such, the Court also rejects Defendant's stipulation offer as there is very little, if any, prejudicial effect to be avoided through a stipulation and it would interfere with the government's right to present the "full evidentiary force of the case as the government chooses to present it" and to present a "coherent narrative" of Defendant's thoughts and actions in perpetrating the crime. *See Old Chief*, 519 U.S. at 186-87, 192. Moreover, limiting instructions may be given to limit any potential prejudice to Defendant.

### 4. Evidence of Trust with the Associate

The government also seeks to admit evidence that a relationship of trust existed between Defendant and the Associate consistent with the charged conduct. Specifically, the government wants to introduce evidence that Defendant directed the Associate to submit a false affidavit that Defendant subsequently notarized to the NYSBD and DOS in order to "thwart" ongoing investigations into the Associate's business and lay blame on one of the Associate's employees for falsified documents that the Associate submitted to the agencies. (Gov't Mem. at 16-17.) The government also seeks to introduce evidence that Defendant appeared at an administrative hearing concerning this investigation to assist the Associate's attorney. (*Id.* at 18 n.8.) In the alternative, the government argues this evidence is admissible to corroborate the Associate's testimony. (*Id.* at 16.) Defendant objects, arguing that the evidence is not relevant, is more

prejudicial than probative (including the cumulative effect of the evidence), would cause undue delay, and waste time. Defendant instead offers to stipulate that a "relationship of trust" exists between him and the Associate. (Def.'s Opp'n at 17-18.)

The government's motion is denied with respect to this evidence, but without prejudice to renew should Defendant assert an entrapment defense (*see infra* section II, C) or otherwise opens the door to its admission at trial. Although the government argues correctly that the evidence is admissible to show the development of a relationship of trust between Defendant and the Associate, *see United States v. Williams¸* 205 F.3d 23 33-34 (2d Cir. 2000); *United States v. Rosa*, 11 F.3d 315, 333-334 (2d Cir. 1993); *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992), and to corroborate the Associate's testimony as a cooperating witness who participated in the commission of uncharged crimes jointly with the defendant, *see United States v. Everett*, 825 F.2d 658, 660 (2d Cir. 1987), the Court finds the prejudice outweighs its probative value. This evidence essentially is evidence of Defendant's prior obstruction of justice, but in connection with a state investigation. As such, the jury may interpret this evidence as propensity evidence. The Court already has permitted the government to introduce evidence of other criminal conduct between Defendant and the Associate that is probative of the relationship of trust that existed between the two and completes the story or narrative of the crime. The Court also has admitted the Senate Financial Disclosure Forms to corroborate the Associate's testimony. Accordingly, this additional evidence is cumulative. Overall, the prejudice to Defendant outweighs its probative value.

### B. Proffer Statements

The government seeks to admit certain proffer statements of Defendant should he offer evidence that contradicts the statements in the admissions either by his own testimony or the

questioning of witnesses.  (Gov't Letter at 2-5, Dkt. Entry No. 91; Proffer Agreement attached as Exhibit 1 to Gov't's Letter; Proffer Agreement attached as Exhibit 2 to Gov't's Letter.)  The government generally is permitted to offer proffer-protected admissions to rebut factual assertions made by Defendant.  The Second Circuit has held that the government properly may introduce proffer-protected defendant admissions to rebut a defendant's contradictory evidence, despite the waivers contained in proffer agreements identical to those here.  *See United States v. Barrow*, 400 F.3d 109, 115-23 (2d Cir. 2005).  The Circuit defined rebuttal evidence as "any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary."  (*Id.* at 121.)  The Circuit also noted that any evidence would be subject to Rule 403 analysis.  (*Id.* at 119-20.)

At this stage, it is premature for the Court to rule on whether the admissions should be admitted when Defendant has not asserted facts that refute them.  Therefore, the Court reserves decision on the admissibility of proffer-protected admissions until the issue is raised at trial.

### C. *Evidence to Rebut an Entrapment Defense*

Defendant intends to assert the defense of entrapment, though he is unclear as to which counts he intends to raise the defense.  (*See* Def.'s Letter of Dec. 15, 2014 ("Def.'s Letter") at 4, Dkt. Entry No. 105.)  As an initial matter, the government objects to the availability of the entrapment defense for Count 4 as the conduct charged in Count 4 began before the government contacted Defendant.  (Gov't's Letter at 5 n.4.)  However, the government intends to rebut the entrapment defense by proving Defendant's predisposition to commit the charged crimes.  (Gov't's Letter at 5.)  The government thus seeks to introduce the following evidence to rebut Defendant's entrapment defense: 1) Defendant's embezzlement from the Referee Accounts; 2) Defendant's use of the USAO Employee to obstruct an investigation into the Associate's case; 3)

Defendant's false statements on Defendant's Senate Financial Disclosure Forms; 4) Defendant's false statements to the state liquor authority; 5) Defendant's fraudulent claims for *per diem* expenses; 6) Defendant's drafting of a fraudulent affidavit on behalf of the Associate in connection with a state agency investigation of the Associate; 7) Defendant's fraudulent reporting of the use of Democratic Senate Campaign Committee ("DSCC") funds; 8) Defendant's false and misleading statements about the Aqueduct Racetrack bidding process; and 9) other false statements made to FBI agents. (Gov't Letter at 6-10.) The government also asserts that an entrapment defense will open the door to its use of the proffer-protected admissions. (*Id.* at 10-11.) Defendant objects, arguing that the government's evidence should be limited to acts that occurred during the "inducement period" and that the evidence should be excluded because it is irrelevant, would cause confusion and delay, and the probative value is outweighed by its prejudicial effect. (Def.'s Letter at 6-12.)

"The Supreme Court has made clear that '[g]overnment agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the [g]overnment may prosecute.'" *United States v. Brand*, 467 F.3d 179, 191 (2d Cir. 2006) (quoting *Jacobson v. United States*, 503 U.S. 540, 548 (1992). "To make out a defense of entrapment, 'a defendant must first prove government inducement by a preponderance of the evidence. The burden then shifts to the government to show that the defendant was predisposed to commit the crime beyond a reasonable doubt.'" *United States v. Al-Moayad*, 545 F.3d 139, 153 (2d Cir. 2008) (quoting *United States v. Gagliardi*, 506 F.3d 140, 149 (2d Cir. 2007)). The government may prove predisposition in order to rebut an entrapment defense by demonstrating any of the following: "'(1) an existing course of criminal conduct similar to the crime for which [the defendant] is

charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement.'" *Id.* at 154 (quoting *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir.1995)). With regard to what is considered "criminal conduct similar to that which the defendant is charged," conduct that is "morally indistinguishable" and "of the same kind" is considered sufficiently similar. *See United States v. Viviano,* 437 F.2d 295, 299 n.3 (2d Cir. 1971); *United States v. Williams,* 705 F.2d 603, 623 (2d Cir. 1983). Defendant argues that the "morally indistinguishable" standard is outdated. (Def.'s Letter at 5.) However, the Second Circuit has not overruled this standard and the cases relied on by Defendant do no more than articulate the ways in which the government can rebut an entrapment defense.

The government also may use evidence of uncharged criminal conduct, s*ee, e,g. United States v. Gantzer*, 810 F.2d 349, 352 (2d Cir. 1987); *United States v. Malachowski*, 415 Fed. Appx. 307, 311-21 (2d Cir. Mar. 23, 2011) (unpublished), or evidence of events that occurred after the inducement, *see United States v. Harvey*, 991 F.2d 981, 994 (2d Cir. 1993). Defendant argues that any evidence of criminal conduct must be close in temporal proximity to the charged crime relying on *Sherman v. United States*, 356 U.S. 369 (1955). However, the Supreme Court in *Sherman* very clearly relied on the specific facts in that case in determining that the defendant's criminal conduct from nine and five years earlier did not show predisposition. The Supreme Court did not hold that "earlier crimes occurring too far in the past" should not be considered. In any event, the uncharged crimes at issue here were close in temporal proximity to the crimes charged.

Here, the government seeks to offer evidence demonstrating "an existing course of criminal conduct similar to the crime for which [the defendant] is charged." (Gov't Letter at

5.) The Court already has admitted most of the evidence the government seeks to introduce to rebut the entrapment defense, including the embezzlement evidence and Senate Financial Disclosure Forms. However, if Defendant pursues a defense of entrapment, then the Court will allow the introduction of evidence that Defendant drafted a fraudulent affidavit on behalf of the Associate. As discussed *supra*, the fraudulent affidavit evidence is admissible, but the Court excluded it as being more prejudicial than probative. Yet, when Defendant asserts the defense of embezzlement, this balance changes and the evidence becomes more probative than prejudicial. Defendant submitted the fraudulent affidavit in an effort to obstruct justice and, therefore, it demonstrates "an existing course of criminal conduct similar to the crime for which [the defendant] is charged." The evidence, thus, is highly probative to prove predisposition, and any prejudicial effect is outweighed by the probative value.[4]

The Court will now address the remaining evidence: 1) using an employee of the USAO to obstruct an investigation into the mortgage fraud case 2) false statements to the state liquor authority; 3) fraudulent claims for *per diem* expenses; 4) fraudulent reporting of the use of Democratic Senate Campaign Committee ("DSCC") funds; 5) false and misleading statements about the Aqueduct Racetrack bidding process; 6) other false statements made to FBI agents; and 7) use of the proffer-protected admissions.

### 1.  Using an Employee of the United States Attorney's Office to Obstruct Investigation Into the Mortgage Fraud Case

The government seeks to introduce evidence that Defendant contacted a USAO employee to obtain non-public information prior to the government's inducement of Defendant. (Gov't's Letter at 6.)   Apart from being admissible as underlying evidence of Counts 3 and 4, this

---

[4] Defendant characterizes this evidence as merely submitting an affidavit with an invalid notary license. (Def.'s Letter at 9.) However, as discussed *supra*, the affidavit evidence involves a much more complicated obstruction of justice scheme.

evidence is also admissible to show predisposition. The Defendant contacted the Employee before the Associate's cooperation with the government, and therefore Defendant cannot assert entrapment as to these charges. *See United States v. Valencia,* 645 F.2d 1158, 1172 n.19 (2d. Cir 1980 ("[E]ntrapment defense . . . cannot be raised without some evidence of inducement by a government agent.") (citing *United States v. Demma,* 523 F.2d 981, 985 (2d Cir. 1975)). Furthermore, this evidence is highly probative of Defendant's propensity and, therefore, any prejudicial effect is outweighed by the probative value. Presenting this evidence also will not cause confusion or delay. Therefore, this evidence is admissible.

### 2. *False Statements to the State Liquor Authority*

The government seeks to introduce evidence that Defendant made false statements to the New York State Liquor Authority in an application for a liquor license that failed to declare Defendant's ownership interests in the store. (*Id.* at 7.) This evidence is admissible relevant direct evidence of Count 11 as discussed *infra*. It also is admissible to rebut any defense of entrapment as the State Liquor Authority relied on these false statements in conducting its investigation concerning the granting of licensing privileges.

### 3. *Fraudulent Claims for Per Diem Expenses*

The government seeks to introduce evidence that Defendant submitted fraudulent claims for *per diem* reimbursement expenses that New York State Senators are entitled to for the days they are in Albany, New York on legislative business. (*Id.*) This criminal conduct is not similar to the charged conduct and is inadmissible for purposes of rebutting an entrapment defense. Lying in order to be reimbursed fraudulently is different from interfering with an ongoing federal investigation. Therefore, the evidence is inadmissible.

### 4. Fraudulent Reporting of the Use of DSCC Funds

The government seeks to introduce evidence that Defendant fraudulently disbursed DSCC funds to himself and others while he was chair of the Senate Democratic Conference. (*Id.* at 8.) In particular, the government wants to show that Defendant funneled money to a political operative to compensate the operative for helping him become the leader of the Senate Democratic Conference and that Defendant funneled money to other New York congressman who also helped achieve that leadership position. (*Id.* at 8-9.) This evidence is not similar to the charged criminal conduct and is inadmissible to rebut an entrapment defense. Although the evidence demonstrates that Defendant illegally may have paid kickbacks for political favors, this type of conduct is distinguishable from interfering with an ongoing federal investigation. Therefore, the evidence is inadmissible.

### 5. False and Misleading Statements about the Aqueduct Racetrack Bidding Process

The government seeks to introduce evidence that Defendant made false and misleading statements to the New York State Inspector General, who was performing an investigation into the bidding process for awarding a license to operate video lottery facilities at Aqueduct Racetrack. (*Id.* at 9.) In particular, the government seeks to introduce evidence that: (a) Defendant lied under oath by implausibly claiming a lack of recall in response to more than 100 questions posed to him; (b) Defendant disclosed information to lobbyists, but claimed falsely, under oath, that the information was not confidential; and (c) Defendant justified this falsehood by asserting that the New York State Senate did not possess confidential materials. (*Id.* at 9-10.)

The uncharged criminal conduct that the government recounts in connection with the Aqueduct Racetrack bidding process is similar to the charged criminal conduct. Both events

show Defendant acting to interfere with an ongoing investigation and lying to investigators in order to frustrate efforts at achieving justice. Furthermore, the evidence is more probative than prejudicial as it tends to show Defendant's predisposition and thus rebuts any entrapment defense. The evidence also will neither cause delay nor confusion. Therefore, the Court finds this evidence admissible to rebut Defendant's entrapment defense.

### 6. Other False Statements Made to FBI Agents

The government seeks to introduce evidence that Defendant made other false statements to FBI agents in addition to the false statements Defendant is charged with making in Counts 8 through 10. (Gov't Letter at 10.) The Court finds these statements admissible to show predisposition, as lying to law enforcement officers during an ongoing criminal investigation is similar to the criminal conduct charged.

### 7. Use of the Proffer-Protected Admissions

The government seeks to introduce proffer-protected admissions in order to rebut any entrapment defense, citing to *United States v. Evans*, 2006 WL 3628073, at *10-11 (N.D. Ohio Dec. 11, 2006). (Gov't Letter at 10.) Defendant incorrectly claims that the government's reliance on *Evans* is misplaced. *Evans* is consistent with Second Circuit case law previously discussed in connection with the other prong of the government's motion *in limine* concerning proffer statements. *See, supra,* section II, B. To the extent Defendant made any proffer statements that are inconsistent with an entrapment defense, the government may use such statements to rebut the defense.

### D. Admission of Evidence to Cross-Examine Defendant

The government seeks to cross-examine Defendant about the following events should Defendant seek to testify: 1) Defendant's solicitation of funds to help Senator Shirley Huntley

repay a personal debt after telling the donors the funds were campaign contributions; 2) Defendant's acceptance of a $10,000 payment from a businessman and use of his official position to lobby on behalf of the businessman's interests; 3) Defendant's violation of New York State Election Law by producing election brochures that led readers to believe Defendant was endorsed by the SEUI Healthcare Workers East Union when he was not; and 4) Defendant's designation of $100,000 in discretionary New York State funds to a non-profit organization operated by one of the liquor store's business partners, which was not used to advance the non-profit's mission. (Gov't's Letter at 11-12.) Defendant objects, arguing that the evidence is more prejudicial than probative and that the government may not introduce extrinsic evidence to prove these crimes or bad acts. (Def.'s Letter at 11-12.) Defendant also contends that the government should not be permitted to cross-examine him about the embezzlements as they are outside the statute of limitations.

Federal Rule of Evidence 608(b) states that:

[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.

FED. R. EVID. 608(b). Evidence admitted under Rule 608(b) is subject to the probative-prejudicial balancing test of Rule 403. *See United States v. Schwab*, 886 F.2d 509, 513 (2d Cir. 1989).

The government will be permitted to cross-examine Defendant regarding these incidents pursuant to Rule 608(b) should Defendant testify at trial. These incidents clearly go to Defendant's character for truthfulness as they all involve incidents where Defendant may have lied or misrepresented facts in order to induce others to act. Moreover, as the Court has found

the embezzlement evidence admissible to prove the government's underlying charges, the government will be permitted to cross-examine Defendant regarding the embezzlements. The law does not prevent the government from questioning Defendant about the embezzlements because they are outside the statute of limitations. These topics are highly probative of Defendant's character for truthfulness, and as such, are not excluded as more prejudicial than probative pursuant to Rule 403.

### E. Preclusion of Defendant's Evidence

The government moves *in limine* to preclude Defendant from: 1) arguing that he committed "the obstruction counts" (Counts 3 and 4) to preserve his political standing; 2) arguing that the government did not and could not charge him with public corruption; 3) arguing that, because he replenished the funds in two referee accounts he did not embezzle the money; 4) introducing evidence that he did not obstruct justice with regard to the Check Register Page because it was returned to the government; 5) offering certain self-serving recordings into evidence; and 6) asking a prosecutor, who the government will call as a witness, about Defendant's familiarity with proffer sessions and perjury. (Gov't Mem. at 20-25.) Defendant opposes the motion for various reasons discussed below. (Def.'s Opp'n at 18-25.)

#### 1. Political Standing Argument

The government moves to preclude Defendant from arguing that he "committed the offenses charged in the Obstruction Counts in order to preserve his political standing." (Gov't Mem. at 20.) Defendant does not intend to argue this point as he acknowledges it is not a legally recognized affirmative defense. (Def.'s Opp'n at 19.) Additionally, the Court does not interpret the government's papers to suggest that they wish to preclude Defendant from arguing intent as Defendant asserts in his opposition. (*Id.*) Therefore, this issue is moot.

### 2. Public Corruption Argument

The government moves to preclude Defendant from introducing evidence that the government did not and could not charge Defendant with public corruption. (Gov't's Mem. at 21.) Defendant contends he will not argue this point. (Def.'s Opp'n at 19-20.) However, Defendant seeks to have the jury understand that no political corruption charges were brought and that the embezzlement charges were dismissed as outside the statute of limitations. (*Id.*) The government agrees to a jury instruction that Defendant is not charged with embezzlement or political corruption, but objects to informing the jury that the embezzlement charges were dismissed. (Gov't's Reply Mem. of Law in Supp. of the Gov't's Mot. *in Limine* ("Gov't's Reply") at 19; Dkt. Entry No.107.) The Court will give the jury a limiting instruction as suggested by the government, and not charge the jury that two counts of embezzlement were dismissed as outside the statute of limitations as there is no legal basis for doing so.

### 3. Replenishment of the Referee Accounts

The government seeks to prevent Defendant from arguing that he did not commit the federal offense of embezzlement because he replenished the Bay Ridge and Linden Boulevard Referee Accounts. (Gov't's Mem. at 23.) Defendant agrees not to argue that "as a matter of law, replenishing funds that have been embezzled renders an earlier embezzlement non-criminal or that such a result [was] obtained here." (Def.'s Opp'n at 21.) However, Defendant asserts that he may want to argue the effect that replenishing the funds had on his intent to commit embezzlement. (*Id.*) The Court will allow Defendant to make this latter argument as it bears directly on his intent. However, Defendant, an attorney, is reminded that "ignorance of the law is no excuse", *see* OLIVER WENDALL HOLMES, THE COMMON LAW 41 (M. Howe ed. 1963) (1881), and the Court may limit Defendant's evidence if it conflicts with this long held principle.

Moreover, the Court may instruct the jury that, under the law, an embezzlement occurs at the time of the taking, regardless whether the item is returned. *See United States v. Irvine*, 98 U.S. 450 (1878).

### 4. The Check Register Page

The government seeks to preclude Defendant from offering evidence that he returned the Check Register Page to the government or that he did not commit obstruction of justice because he returned the Check Register Page to the government. (Gov't's Mem. at 23-24.) Defendant does not seek to introduce evidence about the return of the Check Register Page. (Def.'s Opp'n at 22.) However, Defendant does wish to argue that the fact that he did not destroy the Check Register Page bears on his intent to commit obstruction of justice. (*Id.*) The Court will allow Defendant to pursue this line of argument as it bears directly on whether Defendant possessed the intent to commit obstruction of justice.

### 5. Admissibility of Certain Other Recordings

The government moves to preclude Defendant's introduction into evidence several recorded conversations between Defendant and law enforcement officers and private investigators, Defendant and the Associate, and the Associate and an FBI agent as inadmissible hearsay. (Gov't's Mem. at 24-25; Exhibits 1-6 attached to Def.'s Opp'n.) Defendant objects, asserting that Defendant's conversations are hearsay exceptions because they show Defendant's state of mind and the conversation between the FBI agent and the Associate is not hearsay because it is not being offered for the truth of the matter asserted. (Def.'s Opp'n at 23-24.)

Generally, a party's out-of-court statements are admissible only if offered by that party's opponent. *See* FED. R. EVID. 801(d)(2). However, under Federal Rule of Evidence 803(3), there is an exception to the hearsay rule for "[a] statement of the declarant's then-existing state of mind

(such as motive, intent, or plan) . . . ." FED. R. EVID. 803(3). Defendant argues that the recordings establish his state of mind, because they demonstrate that he sought advice from law enforcement officers during the period when he allegedly obstructed justice. (Def.'s Opp'n at 23.) After reviewing the transcripts, the Court finds that the evidence is not admissible under Rule 803(3). While, as Defendant asserts, the evidence appears to demonstrate that Defendant reached out to private investigators and law enforcement officers on behalf of the Associate, and Defendant encouraged the Associate to use a private investigator, the evidence does not relate to Defendant's state of mind as to the underlying charges of interfering with a federal investigation. Therefore, the evidence does not constitute a hearsay exception under Rule 803(3) and is inadmissible.

On the other hand, the Court agrees with Defendant that the recording between the Associate and the FBI agent is not hearsay. The recording is not being offered for the truth of the issues discussed in the recording, but to demonstrate that the Associate was coached by the FBI agent. Therefore, the recording between the Associate and the FBI agent is admissible as evidence relevant to Defendant's entrapment defense.

### 6. *Cross-Examination of the Prosecutor Witness*

In order to prove Defendant's willfulness to make the false statements charged in Counts 7 through 9, the government intends to call as a witness a prosecutor who will "testify about her interactions with [D]efendant during proffer sessions the government conducted with a witness." (Gov't Mem. at 25.) Defendant acted as counsel for a witness at two proffer sessions on May 17, 2012 and June 28, 2012. (*Id.*) The government expects the prosecutor to testify that she reviewed the terms of the proffer agreements with the witness in front of Defendant, including noting that the witness "received no immunity from prosecution for false statements the

[w]itness made during proffer sessions" and that "it was a crime to lie to federal agents and prosecutors." (*Id.*) The government seeks to limit Defendant from cross-examining the witness about the underlying matters relating to the "investigation of the witness." (*Id.*) Defendant indicates that he will not "explore the 'investigation of the witness'" but seeks to ask questions to "probe the state of the prosecutor's memory in 2015 about proffer sessions in 2012 as well as the prosecutor's bias." (Def.'s Opp'n at 25.)

The Court finds this issue premature. Defendant's cross-examination will be limited to the subject matter of the direct examination. *See* FED. R. EVID. 611. At trial, the government may renew their objection, if Defendant's cross-examination goes beyond the scope of direct examination.

## III.    **Defendant's Motions** *in Limine*

Defendant moves *in limine* to preclude the government from introducing: 1) evidence related to the ownership interest in the liquor store; 2) evidence related to the federal program embezzlement and federal program bribery;[5] 3) the recordings of conversations between Defendant and the Associate and others of December 30, 2011 and February 22, 2012; and 4) other miscellaneous recordings. (*See generally* Mem. of Law in Support of Def. John Sampson's Mot. in Limine ("Def.'s Mot."), Dkt Entry No. 84; Status Conference as to Def., Feb. 2, 2015.) Defendant argues that the evidence is irrelevant and should be excluded under Federal Rule of Evidence 402, or in the alternative, it is unfairly prejudicial, would cause undue delay, and is misleading to the jury and should be excluded under Federal Rule of Evidence 403. In its response, the government agrees not to introduce some of the evidence objected to by Defendant. (*See generally* Gov't's Mem. of Law in Opp'n to Def.'s Mot. in Limine ("Gov't's Opp'n"); Dkt. Entry No. 99.) The Court already has addressed most of the evidentiary issues regarding the

---

[5] Defendant labels this as evidence of "public corruption" in his papers.

federal program embezzlement and federal bribery. Therefore, the only remaining evidentiary issues concern: 1) the liquor store charge; 2) Defendant's use of embezzled funds to finance his campaign for the office of Kings County District Attorney; 3) the fact that Defendant's law practice included the sale of foreclosed properties; 4) the Associate's payment for Defendant's travel to the Caribbean; and 5) the positions Defendant held as a New York State Senator. (Def.'s Mot. at 3-11, 12-13, 15.)

"To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). "Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991). However, as discussed, *supra*, the Court may exclude relevant evidence under Federal Rule of Evidence 403, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

### A. Evidence Related to the Liquor Store

Defendant moves *in limine* to exclude the following evidence related to Count 11: 1) recordings reflecting Defendant's ownership interest in the liquor store; 2) that Defendant was obligated to disclose this interest on his Senate Financial Disclosure Forms; 3) that Defendant did not disclose this interest to the New York State Liquor Authority; and 4) evidence that Defendant used his official position to benefit the liquor store. (Def.'s Mot. at 4-11.)

Specifically, Defendant moves to exclude portions of the SSI, recordings regarding the liquor store, portions of an FBI report of an interview with Defendant, and any other unspecified evidence the government seeks to produce in this regard. (*Id.*)

After reviewing the recordings, the language in the SSI, and the FBI report, the Court finds that the liquor store evidence is admissible to show background context and dimension. The admissibility of evidence concerning Defendant's ownership has been discussed above in section II, C, and held admissible. The evidence in the recordings and the statements in the SSI give relevant background on Defendant's ownership interest in the liquor store. The evidence also provides an explanation of the understanding or intent with which Defendant made the false statements to the FBI agents with which he is charged in Count 11. Without this evidence, the jury would be left to wonder why Defendant made false statements regarding the liquor store to the FBI. The portions of the FBI report Defendant seeks to exclude provide this same background and context, and also are part of the underlying charge that Defendant lied to FBI agents. All of this information, together, gives the information the jury needs to understand the motivation and intent with which Defendant was acting when he spoke to the FBI agents.

Furthermore, the probative value of this evidence is not outweighed by any potential prejudice. The evidence is merely background information and the "bad acts" of lying to state authorities and using his official position to benefit the liquor store are not more egregious than lying to federal agents. The probative value of understanding all of this background information also outweighs any risk of undue prejudice. Additionally, the evidence is not going to cause undue delay or confuse the jury. However, as there are multiple, repetitive recordings related to the liquor store, Defendant may renew his objection at trial if he believes the evidence is unduly

cumulative, causing undue delay, or confusing the jury. Therefore, the liquor store evidence is admissible.

### B. Audio Recordings of Dec. 30, 2011 and Feb. 22, 2012

At the status conference held on February 2, 2015, Defendant moved to preclude two recordings made on December 30, 2011 and February 22, 2012, as being more prejudicial than probative. The government opposed, and later provided the Court with transcripts of the recordings. (Letters Enclosing Trs., Dkt. Entry No. 113 & 114.)

The Court has reviewed the transcripts and finds that they are admissible as relevant direct evidence of the charged crimes. The recordings constitute proof of the underlying charges of obstruction of justice and witness tampering. While the Court understands Defendant's concerns, particularly with regard to the transcript of February 22, 2012, the Court must leave it to the jury to interpret Defendant's statements and their meanings.

### C. Embezzlement Evidence and Defendant's Property Foreclosure Law Practice

Defendant moves to preclude the government from referencing in the SSI or at trial that Defendant used the embezzled funds to finance his campaign for Kings County District Attorney and that Defendant's law practice included the sale of foreclosed properties because it would be unfairly prejudicial, cause delay, mislead the jury, and waste time. (Def.'s Mot. at 12-13.)

The government is precluded from referencing that Defendant used the embezzled funds to finance his campaign for Kings County District Attorney. The evidence is not necessary or relevant to complete the story of the embezzled funds and would be unduly prejudicial.

However, the government is permitted to mention that Defendant's law practice included the sale of foreclosed properties. The evidence is relevant to explain Defendant's role as a court-appointed referee for foreclosed properties. Therefore, it is admissible. Furthermore, the

probative value outweighs any potential prejudice from this evidence, and its admission would not cause undue delay, mislead the jury, or waste time.

### D. Associate's Payment for Defendant's Travel

Defendant moves to preclude the government from introducing evidence that the Associate paid for Defendant's foreign travel to the Caribbean in order to show "quid pro quo" corruption as unfairly prejudicial. (Def.'s Mot. at 13.) The government contends that it is introducing the evidence not to show corruption, but to show the relationship of trust between the Associate and Sampson because some of the trips were taken together. (Gov't Opp'n at 11.) The Court will allow the introduction of evidence of the travel that Defendant and the Associate took together to show the relationship that existed between Defendant and the Associate. However, the Court will not admit evidence of the other travel that the Associate paid for on behalf of Defendant unless it is related to the government's underlying bribery case.[6]

### E. Defendant's Positions in the Senate

Defendant moves to preclude the government from mentioning in the SSI or at trial positions Defendant held in the Senate as irrelevant, confusing, and causing undue delay. (Def.'s Mot. at 15.) The government responds in a footnote, simply that this evidence is not prejudicial and is relevant evidence as to Count 9, concerning abuse of his positions. (Gov't Opp'n at 12 n.15.) This evidence is neither confusing nor will it cause undue delay. The fact that Defendant is a New York State Senator will be before the jury in any event, and, thus, this evidence is neither irrelevant nor unduly prejudicial. Accordingly, it is admissible.

---

[6] The Court also notes that the government did not seek to introduce this evidence in its motion *in limine* and, therefore, it may not be permitted to introduce it at trial if it seeks to admit it.

**IV.     Conclusion**

For the reasons stated above, the government's motions are granted in part and denied in part and Defendant's motion is granted in part and denied in part.


SO ORDERED.

Dated: Brooklyn, New York
        May 4, 2015

_____
               /s/
         DORA L. IRIZARRY