UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,      :
     :
     : **OPINION AND ORDER**
-against-      : 13-CR-269 (S-5) (DLI)
     :
JOHN SAMPSON,      :
     :
Defendant.      :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Defendant John Sampson (the "Defendant") was charged in an eleven-count indictment with embezzlement, conspiracy to obstruct justice, obstruction of justice, witness and evidence tampering, concealment of records, and false statements to law enforcement officers. Defendant moves to (i) dismiss Counts 1 and 2 of the indictment as time barred or for lack of subject matter jurisdiction, and (ii) sever Count 11 of the indictment as improperly joined. (*See* Fifth Superseding Indictment ("SSI")[1], Dkt. Entry 121; Mem. of Law in Support of Def. John Sampson's Pretrial Mot. to Dismiss and to Sever ("Def's Mem."), Dkt. Entry No. 63.) The government opposes. (*See* Gov't's Omnibus Mem. of Law in Opposition to Def.'s Pretrial Mots ("Gov't's Mem."), Dkt. Entry No. 66.) For the reasons set forth below, Defendant's motion to dismiss Counts 1 and 2 of the indictment is granted, and Defendant's motion to sever Count 11 is denied.

**THE INDICTMENT**

Defendant was indicted by a Grand Jury in the Eastern District of New York for embezzlement under 18 U.S.C. § 666 (Counts 1 and 2), conspiracy to obstruct justice (Count 3)

---

[1] The original indictment was filed on April 29, 2013. On March 17, 2015, the government filed a Fifth Superseding Indictment after Defendant filed his motion to dismiss and sever. For the sake of clarity, the counts refer to the charges in the Fifth Superseding Indictment. The Court notes that Count 11 was previously Count 10, as the Fifth Superseding Indictment added a charge. Therefore, the parties' papers refer to Count 10, which is now Count 11.

under 18 U.S.C. § 1512(k), obstruction of justice under 18 U.S.C. § 1503 (Count 4), witness and evidence tampering under 18 U.S.C. § 1512 (Counts 5-7), concealment of records under 18 U.S.C. § 1519 (Count 8), and making false statements to law enforcement officers under 18 U.S.C. § 1001 (Counts 9-11). (SSI ¶¶ 52-55, 58-73, Dkt. Entry No. 121.) Defendant entered into a tolling agreement with the government, which tolled the statute of limitations from February 1, 2013 up to and including May 17, 2013 (the "tolling period") and excluded the tolling period from any statute of limitations calculations. (Statute of Limitations Tolling Agreement attached as "Exhibit A" to Gov't's Mem. at ¶ 4.) The following facts relate to Counts 1, 2, and 11 only.

Counts 1 and 2 of the SSI charged Defendant with embezzling money while acting as a court-appointed referee for foreclosure proceedings conducted by the Supreme Court of the State of New York in Kings County.[2] (SSI, ¶¶ 4-26, 52-55.) Specifically, the SSI states that, "[s]ince approximately 2002, the [D]efendant . . . embezzled hundreds of thousands of dollars in funds from escrow accounts relating to foreclosure proceedings involving four Brooklyn real estate properties;" however, Defendant was charged only in relation to two properties. (*Id.* ¶ 5.) As a referee, Defendant was responsible for selling foreclosed properties and using the proceeds to repay fees, outstanding mortgages, and liens. (*Id.* ¶ 12) Through his position, Defendant oversaw the sales of a property located at 165 Forbell Street in Brooklyn, New York (the "Forbell Street Property"), the subject of Count 1, and another located at 1915 Eighth Avenue (the "Eighth Avenue Property"), the subject of Count 2. (*Id.* ¶ 15.) The state court orders directing the foreclosure and sale of these properties also directed Defendant to repay the mortgages and liens, deposit the proceeds of the sales into escrow accounts opened in his name

---

[2] For purposes of disposing of Defendant's motion to dismiss Counts 1 and 2, the facts alleged in the SSI are accepted as true.

in specified banks, file a referee's report of sale, and forward any surplus funds to the Clerk of the Court. (*Id.* ¶ 18, 21; J. of Foreclosure and Sale Forbell Street Property ("Forbell St. Jgmt.") attached as "Exhibit A" to Decl. of Nathaniel H. Akerman in Supp. of Def. John Sampson's Pretrial Mot. to Dismiss and to Sever ("Akerman Decl.") at 4, Dkt. Entry No. 64 (directing "that said referee then deposit the balance of said proceeds of sale in his own name as Referee in Citibank, N.A."); J. of Foreclosure and Sale Eighth Street Property ("Eighth St. Jgmt.") attached as "Exhibit E" to Akerman Decl. at 4 (directing "that said Referee then deposit the balance of said proceeds in his/her own name as Referee in Independence Savings Bank, Montague St. Branch, Bklyn").)[3] The judgments of foreclosure and sale also directed Defendant to remit the surplus funds to the Kings County Clerk within five days of filing his reports. (Forbell St. Jgmt. at 6; J. Eighth St. Jgmt. at 6.)

On October 7, 1998, Defendant sold the Forbell Street Property, signed his referee report, and deposited approximately $80,000 in surplus funds from the Forbell Street Property into a Chase Bank account in his name (not a Citibank account as directed by the state court). (SSI, ¶ 19; Chase Bank Account Statements attached to Akerman Decl. as "Exhibit D"; Referee's Report of Sale Forbell Street Property attached to Akerman Decl. as "Exhibit B" at 3.)[4] Thus, Defendant was supposed to remit the surplus funds to the Kings County Clerk by October 12,

---

[3] Exhibits A-F attached to the Akerman Decl. were produced by the government during discovery. (Akerman Decl, ¶¶ 3-8.)

[4] There is a discrepancy as to when Defendant sold the Forbell Street Property. The SSI states that Defendant sold the property on July 9, 1998 (SSI, ¶ 19) as does the Report of Sale (Referee's Report of Sale Forbell Street Property attached to Akerman Decl. as "Exhibit B" at 1). However, the Referee's Deed lists the sale date as October 7, 1998. (Referee's Deed attached to Akerman Decl. as "Exhibit C".) For purposes of deciding the instant motion, the Court uses the date that Defendant transferred the deed, the latest possible date.

1998.[5]  On or about February 13, 2008, Defendant transferred $8,000 from the Chase Bank account into his personal bank account. (SSI, ¶ 20.) Defendant never deposited the surplus funds with the Kings County Clerk. (*Id.*)

On June 28, 2002, Defendant sold the Eighth Street Property, signed his referee report, and deposited approximately $80,000 in surplus funds from the sale into an HSBC account in his name (not in an Independence Savings Bank account as directed by the state court). (SSI, ¶ 22; HSBC Account Statements attached as "Exhibit A" to Reply Mem. of Law in Supp. of Def.'s Mot. ("Def.'s Reply"), Dkt. Entry No. 71.) Thus, Defendant was supposed to remit the surplus funds to the Kings County Clerk by July 3, 2002.

On July 21, 2006, a balance of $55,167.94 remained in the HSBC account, which Defendant combined with a bank check for $27,500 to purchase a bank check in the amount of $82,667.94 (the "2006 Bank Check"). (*Id.* ¶ 24.) Defendant made the 2006 Bank Check payable to the "Kings County Clerk Office." (*Id.*) However, Defendant never deposited the 2006 Bank Check with the Kings County Clerk. (*Id.* ¶ 25.) Instead, on or about and between June 7, 2008, Defendant exchanged the 2006 Bank Check for eight bank checks worth $10,000 each and one bank check for $2,667.94, all made payable to John Sampson. (*Id.*) On or about and between June 12, 2008 and January 12, 2009, Defendant redeemed for cash three of the $10,000 bank checks, negotiated the $2,667.94 bank check, and deposited two of the $10,000 bank checks into

---

[5] While it the SSI states that Defendant signed the referee reports on specific dates, it does not state whether the reports were filed with the Kings County Supreme Court on the same day. However, the government has not objected to Defendant's assertions that the reports were submitted on the days they were signed. Notably, Defendant also was obligated by the judgments of foreclosure and sale and by New York Civil Practice Law and Rules ("CPLR") to file his reports within 30 days of the property sales. Thus, Defendant would have violated both the court order and law if he had not submitted his Forbell Street Property Report by November 6, 1998 and his Eighth Street Property report by July 28, 2002. (N.Y. C.P.L.R. § 4320(b) (McKinney 1962); Forbell St. Jgmt. at 7; Eighth Street Jgmt. at 7.) Therefore, if the referee reports never had been filed, Defendant would have embezzled the money on the 36th day after the sales, still starting the running of the statute of limitations in 1998 and 2002.

his personal account. (SSI, ¶ 26.) Defendant never repaid the surplus funds to the Kings County Clerk. (*Id.*) Collectively, these transactions shall be referred to as the "2008 transactions."

Count 11 of the SSI charges Defendant with making materially false, fictitious and fraudulent statements and representations to Federal Bureau of Investigation ("FBI") agents about an outstanding sales tax balance owed by a liquor store in which the Defendant allegedly has a financial interest. (SSI, ¶¶ 43-46, 50-51, 72-73.) From 1997 through the present, Defendant served as a member of the New York State Senate ("Senate"). In or about December 2011, John Sampson acquired an ownership interest with four other partners in a liquor store in Brooklyn, New York, which ownership he subsequently concealed from his Senate staff members. (*Id.* ¶¶ 10, 40.) When acquired, the liquor store owed an outstanding sales tax balance. (*Id.*) Defendant, without disclosing his interests, allegedly repeatedly directed one of his Senate staff members to resolve the liquor store's outstanding sales tax obligation. (*Id.* ¶¶ 43-46.) On July 27, 2012, FBI agents interviewed Defendant about his involvement in the liquor store. (*Id.* ¶ 47.) Defendant allegedly admitted to the FBI agents that he had an ownership interest in the liquor store, but falsely denied that he had asked his Senate staff member to resolve the liquor store's tax issues. (*Id.* ¶¶ 50-51, 73.)

## DISCUSSION

### I. Counts 1 and 2 are Time Barred

As to Counts 1 and 2, Defendant is charged with violating 18 U.S.C. § 666, which states, in pertinent part:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists--(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that--(i) is valued at $5,000 or more, and (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency. . . .

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666(a)-(b). The statute of limitations for 18 U.S.C. § 666 violations is five years. 18 U.S.C. § 3282.

A. The Parties' Arguments

The government has alleged that the statute of limitations for the embezzlement charges began running when the Defendant converted the surplus funds to his own use via the 2008 transactions. Defendant disagrees with the government, contending instead that the embezzlement occurred at the point of the initial taking, *i.e.*, from the day after Defendant was obligated to deposit the surplus funds to the Kings County Clerk for each foreclosure sale. (Def.'s Mem. at 12-13.) Defendant was required by the state court foreclosure and sales judgments to deposit the surplus funds with the Kings County Clerk within five days of filing his referee reports. Additionally, Defendant cites to New York Real Property Actions and Proceedings Law ("RPAPL") that also requires "[a]ll surplus moneys arising from the [foreclosure] sale shall be paid into court by the officer conducting the sale within five days after the same shall be received." N.Y. REAL PROP. ACTS. LAW § 1354(4) (2002). Defendant categorizes the 2008 transactions, for which he is charged, as use of money with embezzled funds, not new, separate embezzlements or crimes for which the prosecution would be timely.[6] (Def.'s Mem. at 18.)

---

[6] In his reply, Defendant improperly asserts for the first time that Counts 1 and 2 are multiplicitous. (Def's Reply at 13 n.14.) The Court need not reach a decision on this argument because the counts are dismissed as time barred. However, even if that were not the case, the Court will not consider issues raised for the first time in a reply brief, without first giving the opposing party an opportunity to respond. *See, e.g. Booking v. General Star Management Co.*, 254 F.3d 414, 418 (2001).

Defendant also argues that, even if the Court were to find the embezzlements occurred within the five-year statute of limitations, the Court lacks subject matter jurisdiction to decide the embezzlement counts. (Def.'s Mem at 19-20.) Defendant maintains that he was not an agent of the Supreme Court of the State of New York, as the SSI contends, but an agent of Kings County Supreme Court because he was appointed by Kings County Supreme Court judicial officers to handle foreclosure cases filed before that court. (*Id.* at 20.) Finally, Defendant reasons that, "regardless of the entity for which [he] had been an agent, any agency relationship terminated [when the foreclosure matters concluded,] well before the 2008 embezzlements alleged in Counts 1 and 2." (*Id.* at 21.) Alternatively, Defendant claims that the act of embezzling the money breached his fiduciary duty and terminated his agency relationship. (Def.'s Reply at 14.) The Court need not decide any of these alternative arguments as it finds that Counts 1 and 2 are time barred.

As an initial matter, the government contends that Defendant's dismissal motion is premature and procedurally barred because the government "has not made a full factual proffer of all evidence relevant to the charged embezzlements, such as statements attributed to the defendant at the time that he embezzled funds from the Referee Accounts." (Gov't's Mem. at 7, 11.) The government also maintains that the Court's determination of when the embezzlement was complete is a jury question. (*Id.*) Defendant replies that the motion is properly before the Court because the embezzlement occurred once Defendant did not deposit the surplus funds within the requisite time period, which Defendant concedes he did not do.

Next, the government contends that, even if Defendant's dismissal motion is procedurally proper, the motion fails because "each improper withdrawal or transfer from a trust or escrow

account constitutes a distinct crime of embezzlement." [7] (*Id.* at 14.) The government further reasons that, to be charged under 18 U.S.C. § 666, Defendant must have appropriated or used the funds, which he did not do "until he withdrew or transferred those specific funds from the Referee Accounts." (*Id.* at 17). The government contends that holding otherwise would invite fiduciaries to hold on to funds, but not use them, until the statute of limitations runs and shields them from prosecution. (*Id.* at 19.) Furthermore, if the principle demanded the money within the statute of limitations period, the fiduciary could return the money and assert a negligence defense. (*Id.*) Specifically, in regard to the Eighth Street Property, the government maintains that Defendant did not embezzle the money until June 7, 2008 when he exchanged the 2006 Bank Check for bank checks in his own name, thus treating it as his own, completing the embezzlement, and starting the clock on the statute of limitations. (*Id.* at 22-23.)

The government also contends Defendant's motion to dismiss for lack of subject matter jurisdiction is premature because it "has not provided a proffer of all evidence." (*Id.* at 24.) The government maintains that, contrary to Defendant's assertions, Defendant is an agent of the Supreme Court of the State of New York because it is a single court of statewide jurisdiction and, as such, in his capacity as referee, Defendant served as an agent of the New York State Supreme Court, not Kings County Supreme Court. (*Id.* at 26-27.) Lastly, the government further maintains that Defendant's agency continued as long as he "retained the funds in the Referee Accounts pursuant to his appointment as a referee." (*Id.* at 29.) As stated above (at p. 7), the Court need not address this contention as Counts 1 and 2 are time barred.

---

[7] While the government maintains that it is not proceeding under a continuing offense theory and concedes that embezzlement under 18 U.S.C. § 666 is not a continuing offense (Gov't's Mem. at 12), the Court finds that the government's assertion that each withdrawal is a new embezzlement crime is, in effect, a continuing offense theory. The government recognizes that it cannot posit a continuing offense theory under 18 U.S.C. § 666 as that statute does not meet the requirements for a continuing offense theory.

B. <u>Defendant's Motion to Dismiss Counts 1 and 2 is Ripe for Decision</u>

Pretrial motions to dismiss an indictment on certain counts in an indictment, such as the instant motion, are made pursuant to Rule 12(b). Rule 12(b) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(2). When deciding a motion to dismiss an indictment, the Court must take the allegations of the indictment as true. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16 (1952). Additionally, the Court only may consider evidence that compliments and does not contradict the allegations in the indictment. *See, e.g. United States v. Bicoastal Corp.,* 819 F. Supp. 156 (N.D.N.Y. 1993) (Indictment reinstated once it became clear that the defendants' allegations contradicted, rather than complimented, the indictment.)

Defendant's pretrial motion to dismiss Counts 1 and 2 of the indictment as time barred is not premature. The determination of whether the embezzlements fall within the five-year statute of limitations period can be addressed without a trial on the merits because Defendant does not ask the Court to determine whether he is guilty of embezzlement or to make a factual finding by going beyond the face of the indictment. Indeed, Defendant has accepted the allegations in the indictment as true and argues only that the embezzlements were complete in 1998 and 2002, when he failed to comply with his statutory and court mandated duty to deposit the surplus funds to the Kings County Clerk within five days of filing his referee reports. (Oral Arg. on Def.'s Mots. at 4-5, Oct. 23, 2014) Notably, Defendant's additional evidence proffers were obtained from the government through discovery and serve to compliment rather than contradict the allegations in the indictment. Therefore, this motion is ripe for consideration.

The cases that the government relies on to support their position that the motion is premature are inapposite. In *Alfonso,* the Second Circuit reversed a district court's dismissal of

9

an indictment where the district court "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial." *United States v. Alfonso,* 143 F.3d 772, 776-77 (2d Cir. 1998). Additionally, the district court dismissed the indictment because it found that a jurisdictional element of the offense had not been satisfied, a decision which the Second Circuit held went to "the 'general issue' of whether the statute ha[d] been violated," which is a jury question. *Id.* at 777. The government's relies on *United States v. Francisco*, 2007 WL 2265147 (S.D.N.Y. 2007), which is distinguishable for the same reason as *Alfonso*. In *Francisco*, the district court found the pretrial motion premature because the Court would have been forced to make a determination on a jurisdictional element of the offense. None of the circumstances in *Alfonso* or *Francisco* are present here. First, this Court is relying solely on the allegations contained in the indictment in making its determination. Second, a decision as to whether the statute of limitations has run is not a factual determination as to a jurisdictional element of the offense charged, but rather a question of law within the Court's province to decide.

The government's reliance on *Bicoastal Corp.* is misplaced because the court in that case reinstated the indictment after finding the defendants' evidence contradicted instead of complimented the indictment. *See Bicoastal Corp.*, 819 F. Supp. at 157-159. This is clearly not the case here, where Defendant has stipulated to the facts of the indictment and offers only complimentary evidence produced by the government.

Finally, the government offered a Michigan Court of Appeals case, *People v. Artman,* 218 Mich. App. 236, 240-42 (1996), to support their position. State court cases are not binding on this Court, but even if they were, the Michigan statute charged in *Artman*, although similar to 18 U.S.C. § 666, has specific intent requirements not present in 18 U.S.C. § 666. Those

requirements obligated the court to submit the statute of limitations question to the jury to determine when the defendant intended to embezzle the money.

The government's additional contention that the motion is premature because it has not proffered all of the evidence related to the embezzlements is also unavailing. Supplemental evidence would not alter the Court's decision, as the Court must and does rely solely on the facts as set forth in the indictment to make its determination.[8] Notably, not only is the government's position contrary to the case law discussed above, it would put the government in the untenable position of controlling the Court's decisions of pretrial motions simply by stating it had not made a full evidentiary proffer, requiring either lengthy unnecessary pretrial hearings or delaying decisions on pretrial motions on pure questions of law until mid-trial, after the government has presented its evidence on the issue. Such results are neither efficient nor proper.

    C.    <u>Counts 1 and 2 are Dismissed as Time Barred</u>

Statutes of limitations serve to "protect individuals from having to defend themselves against charges when the basic facts [and evidence] may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie v. United States*, 397 U.S. 112, 114-15 (1970); *United States v. Irvine*, 98 U.S. 450, 452 (1878) ("It is unreasonable to hold that twenty years after this he can be indicted for wrongfully withholding the money, and be put to prove his innocence after his receipt is lost, and when perhaps the pensioner is dead.") Statutes of limitations also have the "salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie*, 397 U.S. at 115. Therefore, statutes of limitations are "'to be liberally interpreted in favor of repose.'" *Id.* (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932)).

---

[8] Indeed, at the eleventh hour, the government proffered additional evidence that had no relevance or bearing on the Court's decision. (Gov't's letter including factual proffer, Dkt. Entry No. 80.)

It is blackletter law that a statute of limitations begins to run when the crime is complete. *Toussie*, 397 U.S. at 115 (citing *Pendergast v. United States*, 317 U.S. 412, 418 (1943)). An offense is completed "when each element of that offense has occurred." *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999). As applied specifically to the facts of this case, the elements of 18 U.S.C. § 666 are: (1) Defendant is "an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof" who (2) "embezzles . . . property that" (3) "is valued at $5,000 or more," and (4) "is owned by . . . such organization, government, or agency," and (5) "the organization, government, or agency receives, in any one year period, [federal] benefits in excess of $10,000 . . . ." *See* 18 U.S.C. § 666(a)-(b). With regard to Defendant's motion, the Court's decision specifically rests on when Defendant embezzled the funds.

Embezzlement comprises:

> (1) a conversion—or, in other words, an unauthorized appropriation—of property belonging to another, where (2) the property is lawfully in the defendant's possession (though for a limited purpose) at the time of the appropriation, and (3) the defendant acts with knowledge that his appropriation of the property is unauthorized, or at least without a good-faith belief that it has been authorized.

*United States v. Stockton*, 788 F.2d 210, 217 (4th Cir. 1986). Therefore, the offense of embezzlement is "'completed as soon as there has been an actual taking of the property.'" *United States v. Sunia*, 643 F. Supp. 2d 51, 75 (D.D.C. 2009) (quoting *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987)) (comparing embezzlement to larceny). The United States Supreme Court in *Irvine* discussed how "a duty of immediate payment [and a failure to pay,] . . . . [an] unreasonable delay, some refusal to pay on demand, or some such intent to keep the money wrongfully" would all constitute a taking and completion of the crime, "and from that day forward the [s]tatute of [l]imitations begins to run against the prosecution." *Irvine*, 98 U.S. at

451-52 ("Whenever the act or series of acts necessary to constitute a criminal withholding of the money have transpired, the crime is complete . . . .").[9]

What a defendant chooses to do with the property after he embezzles it has no bearing on whether he completed the embezzlement. Even if a defendant were to do nothing with the property, he still would have completed the crime of embezzlement. *See United States v. O'Hagan*, 521 U.S. 642, 682 n.1 (1997) (Thomas, J. and Rehnquist, J. concurring in part and dissenting in part) ("Any 'fraudulent appropriation to one's own use' constitutes embezzlement, regardless of what the embezzler chooses to do with the money."); *United States v. McCarthy*, 271 F.3d 387, 395 (2d Cir. 2001), abrogated on other grounds by *Eberhardt v. United States*, 546 U.S 12 (2005) ("Contrary to McCarthy's assertion, even if his actions stopped after he transferred the Plans' trust account funds to accounts under his control, he would have completed the crime of embezzlement."); *see also Irvine*, 98 U.S. at 452 ("There is in this but one offence. When it is committed, the party is guilty and is subject to criminal prosecution, and from that time, also, the Statute of Limitations applicable to the offence begins to run.")

From the facts set forth in the SSI and the supplemental facts provided by Defendant in his motion that complement the allegations in the indictment (*see* pp. 1-5 above), it is evident that Defendant embezzled the money from the Forbell Street Property in 1998 and the Eighth Street Property in 2002. Therefore, the statutes of limitations have long since expired for Counts 1 and 2. Defendant was obligated under court orders and the RPAPL to remit the surplus funds within five days of filing his referee reports. These obligations were a "duty of immediate payment," which Defendant failed to comply with. When Defendant did not return the funds,

---

[9] Although the defendant in *Irvine* was charged with "unlawful withholding" and not "embezzlement," the facts are very similar to the present case where the Defendant, an attorney who initially was in lawful possession of funds, unlawfully kept or withheld the funds instead of remitting them to their proper owner, and then argued that the statute of limitations had expired when he was indicted. *See Irvine*, 98 U.S. at 450-51.

13

and instead kept them in accounts under his name and to which he alone had access, he completed the crime of embezzlement. Moreover, Defendant did not deposit the funds in accounts at the banks specified in the state court orders, but instead deposited the funds in other banks. On the sixth day, when he did not return the funds, Defendant appropriated the funds and completed the embezzlement.

Policy considerations for having a statute of limitations are also on display here. First, evidence apparently is missing. At oral argument, Defendant indicated, without government objection or retort, that bank account statements for the Forbell Street Property no longer exist (Oral Arg. on Def.'s Mots. at 18-19.). If the Court allowed the case to proceed in these counts, it would be putting an unfair burden on the Defendant to defend himself against stale and missing evidence.

Second, the government incontrovertibly delayed for years in bringing these charges. The government's assertion that it could not have brought charges until there was evidence Defendant "used" the funds has absolutely no basis in law.[10] As an initial matter, 18 U.S.C. § 666 does not require Defendant to use the money, but merely to embezzle it. Next, as Defendant both violated a court order and the RPAPL, the government easily could have indicted Defendant on the sixth day when he did not remit the funds. Following the government's baseless theory, the Defendant never could be charged with embezzlement if he never "used" the funds, but rather let them sit in a bank account forever. To permit the government to proceed on such a

---

[10] The government claims that a defendant would be encouraged simply not to use funds and wait for the statute of limitations to expire and, thus, avoid prosecution, if the Court were to disagree with the government's theory. The government's flawed reasoning entirely misses an important purpose of a statute of limitations. As the Supreme Court stated in *Toussie*, statutes of limitations encourage law enforcement officials to investigate suspected criminal activity promptly. *Toussie*, 397 U.S. at 115. In the instance case, it is disturbing that no law enforcement agency or the New York State Court system itself did anything to ensure that the foreclosure orders and the RPAPL were complied with, considering the obvious potential for abuse by referees and the large amounts of money at stake.

14

theory "would transform the limitations period from a check on government delay in prosecution to a function of prosecutorial discretion." *Yashar*, 166 F.3d at 879.

The government's argument that each withdrawal from the account constituted a separate embezzlement for which Defendant could be charged equally has no support in the blackletter law just discussed. There was only one taking in connection with each of the two properties at issue. Contrary to the government's contentions, the cases upon which it relies do not support the government's position, as discussed below.

*United States v. Newell* actually refutes the government's contention as the *Newell* court relied on *Bell v. United States* in holding that a "single transaction should not be split up into multiple offenses." *United States v. Newell*, 658 F.3d 1, 25 (1st Cir. 2011) (quoting *Bell v. United States*, 349 U.S. 81 (1955)) ("'[I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses . . . .'"). Among the other cases the government cites to support their position, many involved a scheme or plan where the defendant repeatedly received separate payments, unlike the single receipt of funds for each property that exists in the present case. *See United States v. Keen*, 676 F.3d 981, 992 (11th Cir. 2012) (An "independent commission of a second § 666 offense" found where defendant received multiple, separate payments from a fraudulent housing program scheme.); *United States v. Rivlin*, 2007 WL 4276712 (S.D.N.Y. 2007) ("[E]ach time that Rivlin received and endorsed a check from the Fund on behalf of his deceased father, the necessary elements of the offense were satisfied and the statute of limitations began to run with respect to that violation."); *c.f. Sunia*, 643 F. Supp. 2d at 72 (where defendants were charged, *inter alia*, with conspiracy to violate 18 U.S.C. § 666, the court (following *Toussie* and *Yashar*) rejected the government's arguments that section 666 was a

continuing offense and "that offenses committed outside the five-year statute of limitations should be deemed to have occurred within the permitted time period so long as they are part of a larger pattern or scheme that straddles the statutory deadline.").

The government also cites to two state cases that, besides not binding on this Court, are inapposite. In *Artman*, the court found that a new embezzlement occurred each time a lawyer transferred money from her client's trust account to other counts. *Artman*, 218 Mich. App. at 240-44. As already discussed, *Artman* differs from the case at bar where there was but one taking when Defendant failed to remit the funds as required under New York State law and court orders. Even though there was a single taking in *State v. Modell*, the court held the taking had occurred within the statute of limitations as it was unclear whether the check was under the defendant's control until he deposited the money. *State v. Modell*, 260 N.J. Super. 227, 253 (App. Div. 1992). Such unequivocally is not the case here, where Defendant had complete control over the funds the entire time. The Court finds the government's authority unconvincing. Accordingly, Counts 1 and 2 of the indictment are dismissed as time barred.

## II.     Defendant's Motion to Sever Count 11 of the Indictment is Denied

Defendant argues that Count 11 of the indictment should be severed as improperly joined or, in the alternative, because it will unfairly prejudice him. The government opposes.

Rule 8(a) of the Federal Rules of Criminal Procedure provides that "[t]he indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character . . . or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). The Second Circuit has stressed that Rule 8(a) joinder "is not limited to crimes of the 'same' character but also covers those of 'similar' character, which means '[n]early corresponding; resembling in many respects; somewhat alike; having a

general likeness." *United States v. Werner*, 620 F.2d 922, 926 (2d. Cir. 1980) (quoting Webster's New International Dictionary (2d ed.)). Courts also have found joinder proper for distinct criminal acts where they originated from a common scheme. *Id.* at 927 (citing *United States v. Rabbitt*, 583 F.2d 1014, 1021 (8th Cir. 1978)) (Joinder is proper for separate bribery schemes because defendant used his "power, authority, and influence as a legislator" to obtain money.). Important policy considerations "of trial convenience and economy of judicial and prosecutorial resources" also support Rule 8(a) joinders. *Werner,* 620 F.2d at 928.

Where the proper joinder of offenses in an indictment appears to prejudice a defendant, a district court may order separate trials. *See* FED. R. CRIM. P. 14(a). That decision is within the "sound discretion" of the district court. *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (citations omitted). To prevail under a Rule 14 motion for a separate trial, "'the defendant must show not simply some prejudice but *substantial* prejudice.'" *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (quoting *Werner*, 620 F. 2d at 928) (emphasis in original). Substantial prejudice means "'prejudice so great as to deny [the defendant] a fair trial.'" *Salameh*, 152 F.3d at 115 (quoting *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991)). Generalized concerns of "spillover" prejudice are insufficient to demonstrate the level of prejudice necessary for a defendant to prevail on a Rule 14 motion. *See United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008); *see also Werner*, 620 F.2d at 929.

Count 11 is joined properly because it is of the same or similar character as Counts 9 and 10 in the indictment, and is part of Defendant's overarching scheme "to conceal criminal activity from or provide false information to law enforcement" in an attempt to evade justice. (Gov't's Mem. at 31.) The alleged false statements made to FBI agents in Count 11 arose out of the same interview as the false statements alleged in Counts 9 and 10. The interview itself concerned

17

Defendant's alleged scheme to obstruct justice. The FBI interview also was the conclusion of a long-term investigation into Defendant involving a series of wiretaps through which law enforcement discovered the liquor store scheme. (SSI ¶¶ 38-46.) Therefore, if Count 11 were severed, as the government has indicated, there would be significant overlap in the two separate trials between witnesses, Defendant's statements, and background evidence presented. Finally, taking into consideration the important policy concerns for Rule 8(a) joinder regarding conservation of judicial resources, the Court finds that joinder is proper.

Furthermore, joinder will not prejudice Defendant. Defendant's concerns that the political nature of the allegation in Count 11 will prejudice the jury as to the rest of the allegations do not rise to the level of substantial prejudice necessary to justify granting the Rule 14 motion. Moreover, Defendant's concerns can be addressed by crafting appropriate limiting jury instructions. *See United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (noting that even in situations where the risk of prejudice is high, less drastic measures, such as limiting instructions, often suffice). The Court finds that limiting instructions would be sufficient to address any purported prejudice, and, therefore, severance is unnecessary. Accordingly, the severance motion is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Counts 1 and 2 of the indictment is granted. Defendant's motion to sever Count 11 of the indictment is denied.

SO ORDERED.

Dated: Brooklyn, New York
       August 12, 2015

/s/
DORA L. IRIZARRY
United States District Judge