

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NR/AAS  
F. #2010R00138

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 31, 2018

<u>By ECF and Hand Delivery</u>

Honorable Dora L. Irizarry  
Chief United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

   Re: United States v. John Sampson  
      <u>Criminal Docket No. 13-269 (DLI)</u>

Dear Chief Judge Irizarry:

  The parties in the above-referenced matter have agreed to enter into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) as to the two embezzlement charges recently reinstated by the Second Circuit. The proposed agreement includes a recommended sentence of 60 months' imprisonment for both counts to run concurrently to each other and concurrently with the original 60 months' sentence imposed by the Court in this matter. The plea agreement further contemplates full payment of restitution by the defendant to the Supreme Court of the State of New York in Kings County. A copy of the proposed plea agreement is enclosed.

  This letter provides information relevant to the Court's consideration of the proposed plea agreement and an explanation as to why the Court should accept the plea agreement.

I. <u>Legal Standard</u>

  Rule 11(c)(3)(A) of the Federal Rules of Criminal Procedure provides that, if presented with a plea agreement pursuant to Rule 11(c)(1)(C), "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Section 6B1.1(c) of the Guidelines mirrors the language of Rule 11(c)(3)(A).

  Section 6B1.2(c) of the Guidelines sets forth the standards for acceptance of a Rule 11(c)(1)(C) plea agreement. As pertinent here, Section 6B1.2(c) provides that "the

court may accept the agreement if the court is satisfied either that: (1) the agreed sentence is within the applicable guideline range; or (2) (A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form." Whether to accept a plea agreement rests within the Court's discretion. See United States v. Severino, 800 F.2d 42, 45 (2d Cir. 1986); United States v. Torres-Echavarria, 129 F.3d 692, 696 (2d Cir. 1997). However, "[d]eference ought to be paid to sentencing bargains because prosecutors are in the best position to make decisions about what sentence to pursue in plea negotiations." United States v. Espar, Inc., 15-CR-28 (JG), 2015 U.S. Dist. LEXIS 30469, at *2 (E.D.N.Y. Mar. 10, 2015).

II.     Factual Background

The government relies on and incorporates by reference the factual recitation contained in its May 12, 2016 sentencing memorandum (Docket No. 246). For the Court's convenience, the government includes the following relevant facts below.

Beginning in the 1990's, Sampson served as a court-appointed referee for foreclosure proceedings of Brooklyn properties conducted by the Supreme Court of the State of New York in Kings County. Accordingly, Sampson was entrusted with conducting sales of foreclosed properties and using the proceeds to repay any outstanding mortgages on the properties. As referee, Sampson controlled escrow accounts holding proceeds of the foreclosure sales. Court orders required Sampson to tender any surplus funds from foreclosure sales to the Kings County Clerk within five days of their receipt. However, Sampson did not remit all surplus funds as required. Instead, he incrementally removed money from the accounts through cash withdrawals and electronic transfers to his own personal accounts. All told, Sampson embezzled approximately $440,000 from escrow accounts.

In or about July 2006, Sampson solicited and received $188,500 from a Queens businessman named Edul Ahmad, in order to replenish embezzled funds from foreclosure escrow accounts. Sampson never repaid these funds to Ahmad and did not declare them on his New York State Senate financial disclosure forms.

In July 2011, the Federal Bureau of Investigation ("FBI") arrested Ahmad on bank and wire fraud charges relating to his orchestration of a scheme to defraud mortgage lenders. These charges were filed by the U.S. Attorney's Office for the Eastern District of New York (the "USAO"). Shortly after Ahmad's arrest, Sampson initiated a scheme to obstruct justice by obtaining confidential information regarding Ahmad's case—including identities of cooperating witnesses and witness statements—in order to prevent Ahmad from pleading guilty and cooperating with the government, and thereby preventing disclosure of Sampson's embezzlement and other criminal conduct. Thereafter, Sampson attempted to obtain confidential, nonpublic information from: (1) Samuel Noel, an administrative employee in the USAO; (2) attorneys who represented Ahmad's co-conspirators; and (3) Warren Flagg, a retired FBI agent who had extensive experience working with the USAO.

Notwithstanding Sampson's efforts, Ahmad began to cooperate with the government's investigation in November 2011, at which time he informed the government about Sampson's criminal conduct and began to participate in recorded meetings and conversations with Sampson.

On April 29, 2013, Sampson was indicted on the following charges: two counts of federal program embezzlement, in violation of 18 U.S.C. § 666(a)(1)(A); conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k); obstruction of justice, in violation of 18 U.S.C. § 1503(a); one count of witness tampering, in violation of 18 U.S.C. §§ 1512(b)(2)(A), 1512(b)(2)(B), 1512(b)(2)(C), and 1512(b)(3); one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(3); evidence tampering, in violation of 18 U.S.C. § 1512(c)(1); concealment of records, in violation of 18 U.S.C. § 1519; and three counts of false statements, in violation of 18 U.S.C. § 1001(a)(2). In particular, the indictment charged two discrete acts of embezzlement occurring in 2008.

Before trial, Sampson moved to dismiss the embezzlement charges as time-barred, arguing that the embezzlement of all funds held in the two referee accounts at issue occurred in 1998 and 2002, when he failed to remit the funds as required by court order to the Kings County Clerk. The Court granted Sampson's motion, holding that as a matter of law the embezzlements were indeed complete in 1998 and 2002.

In a trial commencing on June 22, 2015, the government tried all counts with the exception of the embezzlement charges. On July 24, 2015, the jury found Sampson guilty of the Section 1503(a) count and of two of the false statement charges. The jury acquitted Sampson of the remaining charges.

On January 18, 2017, the Court imposed a sentence of 60 months, which was above the applicable Guidelines range of 36 to 47 months. In particular, the Court considered, among other relevant conduct, Sampson's embezzlement in justifying the upward deviation. Even while considering the embezzlement conduct in fashioning an appropriate sentence, the Court noted that no counts of conviction warranted such restitution. (Sent. Tr. 54, 55-59).

Following sentencing, Sampson appealed the conviction and the reasonableness of the sentence, while the government appealed the pretrial dismissal of the embezzlement charges.

In a published decision, the Second Circuit upheld the conviction and the reasonableness of the sentence, finding that the upward deviation received "ample justification," including the district court's consideration of "Sampson's embezzlement." United States v. Sampson, 898 F.3d 287, 313 (2d Cir. 2018). In a companion published decision, the Second Circuit reinstated the embezzlement charges, finding that the district court should consider a fuller factual record before making a sufficiency of the evidence determination as to the timing of Sampson's fraudulent intent. United States v. Sampson, 898 F.3d 270 (2d Cir. 2018).

3

III.     The Sentencing Guidelines Calculation

Pursuant to the 11(c)(1)(C) plea agreement, the defendant would plead guilty to Counts One and Two of the fifth superseding indictment, each of which charges federal program embezzlement. The government calculates the defendant's Sentencing Guidelines offense level for each Count as follows:

| | |
|---|---:|
| Base Offense Level (§ 2B1.1(a)(2)) | 6 |
| Loss Enhancement (§ 2B1.1(b)(1)(G)) | +12 |
| Violation of Prior Judicial or Administrative Order Enhancement (§ 2B1.1(b)(9)(C)) | +2 |
| Abuse of Trust Enhancement (§ 3B1.3) | +2 |
| Total: | 22 |

The government further calculates that both Counts will be grouped together, resulting in a combined offense level of 22. With the additional adjustments below, the government calculates a total offense level of 21.

| | |
|---|---:|
| Obstruction of Justice Enhancement (§ 3C1.1) | +2 |
| Acceptance of Responsibility (§ 3E1.1) | –3 |
| Total Offense Level | 21 |

As the defendant remains within Criminal History Category I, see U.S.S.G. § 4A1.2(a)(1), the resulting advisory Sentencing Guidelines range of imprisonment is 37 to 46 months. The statutory sentencing range for this violation is between zero years of imprisonment and ten years' of imprisonment. (See 18 U.S.C. § 666).

As noted above, the parties have jointly agreed upon a sentence of 60 months' imprisonment, pursuant to Rule 11(c)(1)(C), to run concurrently to the original sentence imposed by the Court. The plea agreement further contemplates full payment of restitution to the Kings County Clerk as follows: $86,630.79 for the 8th Avenue/Fleet property and $5,305.06 for the Barrister property, for a total of $91,935.85. The defendant has provided the government with documentation establishing repayment of the remainder of the approximately $440,000 originally embezzled.

4

IV.     Analysis

The Court should accept the plea agreement because the negotiated disposition appropriately balances the seriousness of the defendant's conduct against the significant burdens avoided through a negotiated resolution, and it permits careful allocation of prosecutorial and other governmental resources, which would otherwise be devoted to extensive trial litigation.

As an initial matter, the Court expressly considered and assigned substantial weight to the defendant's embezzlement in imposing an above-Guidelines sentence. In light of this fact and in light of the Second Circuit's finding that Sampson's sentence was reasonable in part because of the Court's consideration of relevant conduct, including Sampson's embezzlement, the proposed resolution is reasonable. Further demonstrating the reasonableness of the proposed resolution, the applicable Guidelines range for the anticipated counts of conviction is the same as for the counts of trial conviction.

Moreover, the proposed resolution would make whole again the Kings County Clerk, an outcome that was not possible through the trial conviction. As made clear at the sentencing hearing, restitution is an issue of primary importance to the Court. The proposed resolution, which would save the Court and the government the trouble of another lengthy trial, will ensure full payment of restitution.

Where the government can secure a substantial sentence that adequately reflects the Section 3553(a) factors and ensure full payment of restitution, it is interest of the United States to do so. In the judgment of the government, the mutual concessions in the plea agreement in this case accomplish those twin aims by providing the Court with the opportunity to impose a significant but reasonable sentence and by permitting the government to focus its resources on additional offenders. See generally United States Attorney's Manual § 9-27.420.

Courts have long recognized such interests as appropriate bases for the exercise of prosecutorial discretion:

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern.

5

Wayte v. United States, 470 U.S. 598, 607 (1985); see also Hon. John Gleeson, Idea: The Sentencing Commission and Prosecutorial Discretion: The Role of the Courts in Policing Sentencing Bargains, 36 Hofstra Law Review 639, 656 n.68 (2008) ("Although the Supreme Court used that language [in Wayte] in addressing the decision whether to prosecute, it is equally applicable . . . to whether an arguably reasonable sentence bargain is appropriate.").

      Balanced against the above-listed prosecutorial interests, a sentence of 60 months to run concurrently with the underlying sentence in this matter will adequately reflect the seriousness of the actual offense behavior and not undermine the statutory purposes of sentencing or the sentencing Guidelines. The proposed plea agreement preserves the Court's authority to impose a significant sentence that serves the statutory interests of sentencing and is commensurate with the defendant's serious offense conduct. For these reasons, the government respectfully submits that the agreed-upon sentence is reasonable and appropriate, and the Court should accept the plea agreement.

                                 Respectfully submitted,

                                 RICHARD P. DONOGHUE
                               United States Attorney

            By:     /s/ Alexander A. Solomon
                      Alexander Solomon
                      Assistant U.S. Attorney
                      (718) 254-6074

Enclosure

cc:    Clerk of the Court (DLI)
       Defense counsel